LAWRENCE SYSTEMS, INC., By and Through its Successor-in-Interest, DOUGLAS–GUARDIAN WAREHOUSE CORP., Appellant,

v.

SUPERIOR FEEDERS, INC., O.C. Elliott and Herbert Vogel, Appellees.

No. 07–93–0077–CV.

Court of Appeals of Texas, Amarillo.

June 30, 1994.

Rehearing Overruled July 26, 1994.

Don H. Reavis, Lumpkin, Barras, Reavis & Bunkley, Amarillo, for appellant.

Kelly Utsinger and Kevin P. Parker, Underwood, Wilson, Berry, Stein & Johnson, P.C., Amarillo, for appellees.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

DODSON, Justice.

Lawrence Systems, Inc. (Lawrence Systems) by and through its successor-in-interest, Douglas–Guardian Warehouse Corp., appeals from the trial court's order vacating and rendering null and unenforceable a Texas judgment rendered by the filing of an Oklahoma order under section 35.003 of the Texas Uniform Enforcement of Foreign Judgments Act (the Uniform Act) against Superior Feeders, Inc., O.C. Elliott, and Herbert Vogel (collectively referred to as Superior Feeders) on the ground that enforcement of the judgment is barred by section 16.-066(b) (*i.e.*, the Texas ten-year statute of limitations on actions to enforce foreign judgments).[1] Among other things, Lawrence

Systems makes a first impression claim that section 16.066(b) does not apply to enforcement proceedings brought under the Uniform Act. We affirm.

Lawrence Systems brings seven points of error which are grouped for argument and present five contentions. The contentions are that: (1) Superior Feeders' motion to vacate allegations constitute a collateral attack on Lawrence Systems' Oklahoma judgment; (2) the trial court erroneously admitted evidence aliunde (outside) the judgment; (3) section 16.066(b) does not bar filing and enforcement of the Oklahoma judgment under the Uniform Act; (4) the Oklahoma judgment was rendered on September 23, 1992; and (5) the September 23, 1992 judgment is res judicata to all matters asserted by Superior Feeders.[2]

■ First, we will address Lawrence Systems' third contention that section 16.066(b) does not apply to the Oklahoma judgment filed under the Uniform Act. Under this contention, Lawrence Systems claims that (1) the enforcement proceeding initiated by filing under section 35.003 of the Uniform Act constitutes a registration procedure rather than an action to enforce the judgment, (2) section 16.066(b) applies only to common law actions to enforce foreign judgments, and (3) section 16.066(b) does not apply to proceedings brought under the Uniform Act. We disagree.

Initially, we note that the Full Faith and Credit Clause of the United States Constitution, Article IV, Section 1, declares that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. It is long and well established, however, that the Full Faith and Credit Clause does not preclude the forum state from applying its own statute of limitations to a sister state's judgments when the statute is reasonable and does not discrimi-

---

1. All references to sections 16.066(b) and 35.003 are to those sections of the Texas Civil Practice and Remedies Code Annotated (Vernon 1986), and all references to the Uniform Act are to sections 35.001–35.008 of the Texas Civil Practice and Remedies Code Annotated (Vernon 1986).

2. Superior Feeders claims the Oklahoma judgment was rendered on March 22, 1977 when the general jury verdict was entered by the court clerk. On September 23, 1992, the Oklahoma trial court signed an order memorializing the March 22, 1977 judgment.

nate against out-of-state judgments. *M'El-moyle v. Cohen,* 38 U.S. (13 Pet.) 312, 10 L.Ed. 177 (1839). In that regard, the court in *Tourtelot v. Booker,* 160 S.W. 293 (Tex.Civ. App.—El Paso 1913, writ ref'd), determined that the predecessor to section 16.066(b) passed constitutional muster.

■ Texas courts recognize at least two proceedings for the enforcement of foreign judgments. These enforcement proceedings consist of filing under section 35.003 of the Uniform Act or filing a common law action to enforce a foreign judgment. The common law action is recognized and preserved in section 35.008 of the Uniform Act. Texas courts have consistently applied section 16.-066(b) and its predecessor to common law proceedings brought to enforce foreign judgments from federal courts and sister states. *See, e.g., Collin County Nat. Bank v. Hughes,* 110 Tex. 362, 220 S.W. 767 (1920); *Ferguson–McKinney Dry Goods Co. v. Garrett,* 252 S.W. 738 (Tex.Comm'n App.1923, judgm't adopted).

In that regard, section 16.066(b) provides:

An action against a person who has resided in this state for 10 years prior to the action may not be brought on a foreign judgment rendered more than 10 years before the commencement of the action in this state.

Tex.Civ.Prac. & Rem.Code Ann. § 16.066(b) (Vernon 1986).

Section 35.003 of the Uniform Act provides:

(a) A copy of a foreign judgment authenticated in accordance with an act of congress or a statute of this state may be filed in the office of the clerk of any court of competent jurisdiction of this state.

(b) The clerk shall treat the foreign judgment in the same manner as a judgment of the court in which the foreign judgment is filed.

(c) A filed foreign judgment has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying a judgment as a judgment of the court in which it is filed.

Tex.Civ.Prac. & Rem.Code Ann. § 35.003 (Vernon 1986).

Since the case before us presents a question of first impression concerning the application of section 16.066(b) to enforcement proceedings under section 35.003 of the Uniform Act, we have reviewed cases from other jurisdictions for persuasive assistance. From that review, we are persuaded that cases such as *Eschenhagen v. Zika,* 144 Ariz. 213, 696 P.2d 1362 (Ct.App.1985) and *Alexander Const. Co. v. Weaver,* 3 Kan.App.2d 298, 594 P.2d 248 (1979) present the most logical resolution.

In *Zika,* the court recognized that one of the purposes of the Uniform Enforcement of Foreign Judgments Act is to provide a speedy and economical method of enforcing foreign judgments. 696 P.2d at 1367. However, the court stated that it found nothing in the language of the Act or within the Act's stated purpose which precluded the forum state from applying its own statute of limitations in proceedings under the Act. *Id.* Accordingly, the court held it would apply its own statute of limitations to bar enforcement of the foreign judgment filed under the Arizona Uniform Enforcement of Foreign Judgments Act. *Id.* at 1368.

Similarly, in *Weaver,* the Kansas court stated:

The Uniform Enforcement of Foreign Judgments Act was instituted to provide a more effective and efficient time saving procedure for the enforcement of judgments obtained in foreign jurisdictions. Our adoption of this Act does not extinguish the judgment creditor's right to bring or file an action to enforce his foreign judgment in this state.... It is merely another method available to the judgment creditor. *The statute of limitations applicable to enforcement of a foreign judgment in Kansas should be the same regardless of which of these methods of enforcement is chosen by the judgment creditor.* (Emphasis added).

*Weaver,* 594 P.2d at 250.

The Kansas court held that enforcement under the Kansas Uniform Enforcement of Foreign Judgments Act was governed by the Kansas statute of limitations applicable to

actions on foreign judgments. Further, it was determined, in *Warner v. Warner*, 9 Kan.App.2d 6, 668 P.2d 193, 195 (1983), that "[r]egistration [under the Uniform Enforcement of Foreign Judgments Act] is a simplified alternative to bringing suit on the foreign judgment, and if suit is barred so is registration." *Accord Newhouse v. Newhouse*, 271 Or. 109, 530 P.2d 848 (1975).

To support its position, Lawrence Systems relies on *Producers Grain Corporation v. Carroll*, 546 P.2d 285 (Okla.Ct.App.1976). *Carroll* shows that, on February 2, 1970, Producers Grain obtained judgment against Carroll in a Texas court. On September 6, 1973 (*i.e.*, three years and seven months later), Producers Grain instituted enforcement proceedings in Oklahoma by filing the Texas judgment with the clerk for the District Court of Texas County, Oklahoma, under Oklahoma's version of the Uniform Enforcement of Foreign Judgments Act.[3] Carroll moved to strike the judgment claiming that enforcement of the judgment was barred by the Oklahoma three-year statute of limitations applicable to actions on foreign judgments.

In *Carroll*, the Oklahoma court of appeals determined that the three-year statute of limitations applicable to "civil actions" to enforce a foreign judgment is not applicable to a foreign judgment filed under Oklahoma's Uniform Enforcement of Foreign Judgments Act. The court stated:

> We fail to see how Section 95 can have any application to an enforcement proceeding under the Act. Section 95 applies to *civil actions* on a foreign judgment and a proceeding under the Act is not a civil action within the meaning of Section 95. Indeed, as we noted above, the Act was designed to provide a viable alternative to the traditional method of enforcing foreign judgments by a separate lawsuit in which the judgment was considered nothing more than a contract debt; it totally lacked the force of a domestic judgment, except for evidentiary purposes. The Act does not involve the institution of an action to enforce the judgment; it requires, to give the foreign judgment immediate legally enforceable consequences, only that it be filed in accordance with its provisions.[4] (Emphasis in original).

*Carroll*, 546 P.2d at 287.

The rationale in *Carroll* was grounded on the court's definition of a "civil action" under the Oklahoma statute of limitations. Consequently, the court held that the Oklahoma statute of limitations applicable to civil actions on foreign judgments was not applicable to and did not govern foreign judgment enforcement proceedings brought under Oklahoma's Uniform Enforcement of Foreign Judgments Act because filing under the Act did not constitute a "civil action." In that regard, we point out, that section 16.066(b) is not limited to "civil actions."

Section 16.066(b) refers simply to actions, and the word "action" is not specifically defined. Thus, we must read the word in context and determine its meaning according to the rules of grammar and common usage. Tex.Gov't Code Ann. § 311.011(a) (Vernon 1988); *Linick v. Employers Mut. Cas. Co.*, 822 S.W.2d 297, 301 (Tex.App.—San Antonio 1991, no writ). In that vein, "action" means:

> Conduct; behavior; something done; the condition of acting; an act or series of acts.

> Term in its usual legal sense means a suit brought in a court; a formal complaint within the jurisdiction of a court of law.... The legal and formal demand of one's right from another person or party made and insisted on in a court of justice. An ordinary *proceeding in a court of justice by which one party prosecutes another for the enforcement* or *protection of a right,* the redress or prevention of a wrong, or the punishment of a public offense. *It includes all the formal proceedings in a court of justice attendant upon the demand of a right made by one person of another in such court, including an adjudication upon the right and its en-*

---

3. The Oklahoma version of the Uniform Enforcement of Foreign Judgments Act is modeled after the 1964 version.

4. Section 95 refers to Oklahoma's three-year statute of limitations for "an action on a foreign judgment."

*forcement or denial by the court.* (Emphasis added).

Black's Law Dictionary 26 (5th ed. 1979).

■ The Uniform Act is an enforcement statute rather than a mere registration statute. *See Schwartz v. F.M.I. Properties Corp.,* 714 S.W.2d 97, 100 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). The primary purpose for filing a foreign judgment in Texas is enforcement, and an essential prerequisite to enforcement is compliance with the provisions of the Uniform Act. The Uniform Act requires a judgment creditor to (1) file a copy of the foreign judgment with the clerk of the court of competent jurisdiction in Texas, (2) give the judgment debtor notice of the filing, and (3) pay the required fees. *See* Tex.Civ.Prac. & Rem.Code Ann. §§ 35.003, .004, .007 (Vernon 1986). Because filing and notice are essential elements in an action for enforcement, it follows that enforcing a foreign judgment under the Uniform Act constitutes an "action" as that word is used in section 16.066(b).

■ Furthermore, the word "action" is defined as "a judicial proceeding which, if prosecuted effectively, results in a judgment." *Garcia v. Jones,* 147 S.W.2d 925, 926 (Tex. Civ.App.—El Paso 1940, writ dism'd judgm't cor.). Filing a foreign judgment under the Uniform Act has the effect of initiating an enforcement proceeding and rendering a final Texas judgment simultaneously. *Moncrief v. Harvey,* 805 S.W.2d 20, 23 (Tex. App.—Dallas 1991, no writ); *see also* 5 McDonald Texas Civil Practice § 32:8 (1992). As the court said in *Moncrief:*

> When a judgment creditor chooses to proceed under section 35.003, however, the filing of a foreign judgment partakes of the nature of both a plaintiff's original petition and a final judgment: the filing initiates the enforcement proceeding, *but it also instantly creates a Texas judgment that is enforceable.* (Emphasis added).

*Moncrief,* 805 S.W.2d at 22.

In that regard, the foreign judgment filed under the Uniform Act became a final appealable Texas judgment and subject to post-judgment procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying the judgment. Tex.Civ. Prac. & Rem.Code Ann. § 35.003(c) (Vernon 1986); *Moncrief,* 805 S.W.2d at 23; *Schwartz,* 714 S.W.2d at 100; *Jack H. Brown & Co. v. Northwest Sign Co.,* 665 S.W.2d 219, 222 (Tex.App.—Dallas 1984, no writ).

Consequently, we conclude that filing a foreign judgment under the Uniform Act is an enforcement "action" to which section 16.-066(b) applies. In that regard, we further conclude that section 16.066(b) applies equally to proceedings to enforce a foreign judgment under section 35.003 of the Uniform Act as it does to common law actions for the enforcement of foreign judgments. For limitations purposes, there is no logical difference between the two enforcement proceedings. Lawrence Systems' third contention is overruled.

Lawrence Systems' first, second, fourth and fifth contentions are closely related and will be considered and discussed together. Under these four contentions, Lawrence Systems primarily claims the Oklahoma judgment was rendered on the date it was reduced to writing, signed, and dated (*i.e.,* September 23, 1992), and that the legal doctrines of collateral attack, evidence aliunde the judgment, res judicata, and waiver preclude Superior Feeders from attempting to alter, modify, or change the date of the Oklahoma judgment or from going behind that judgment.

■ First, we will address the fourth contention. By this contention, Lawrence Systems claims that section 16.066(b) does not apply to its Oklahoma judgment because it was rendered on September 23, 1992 and filed in Texas on October 29, 1992 (*i.e.,* before ten years elapsed after its rendition). In that regard, Lawrence Systems asserts that the Oklahoma judgment was not rendered until the judgment was reduced to writing, signed, dated, and approved by the trial court on September 23, 1992. To support its position, Lawrence Systems primarily relies on *Comet Aluminum Company v. Dibrell,* 450 S.W.2d 56 (Tex.1970). Lawrence Systems' reliance on *Dibrell* is misdirected. There, the court stated:

In *Coleman v. Zapp*, 105 Tex. 491, 151 S.W. 1040, at 1041 (1912), we stated that a judgment's "rendition is the judicial act by which the court settles and declares the decision of the law upon *the matters at issue.*" And in *Knox v. Long*, 152 Tex. 291, 257 S.W.2d 289, at 292 (1953), we quoted Freeman on Judgments as stating that a judgment is " 'rendered' when the decision is officially announced either orally in open court *or by memorandum filed with the clerk.*" We then quoted with approval from *Appeal of Bulkeley*, 76 Conn. 454, 57 A. 112, 113 [(1904)], as follows:

> "A judgment is in fact rendered whenever the trial judge officially announces his decision in open court, or out of court signifies to the clerk, in his official capacity and for his official guidance—whether *orally* or by *written* memorandum—the sentence of the law pronounced by him in any cause." (Emphasis added).

*Dibrell*, 450 S.W.2d at 58–59. We find nothing in *Dibrell* establishing that a judgment is not rendered unless and until it has been reduced to writing, signed, and approved by the court. The Texas rule is contrary to this position.

▪ In Texas, judgments may be rendered orally or in writing. *See Reese v. Piperi*, 534 S.W.2d 329, 330 (Tex.1976); *Dibrell*, 450 S.W.2d at 58–59; *Bridgman v. Moore*, 143 Tex. 250, 183 S.W.2d 705, 708 (1944). Also, in Texas, the rendition date of a judgment is a question of law for the court. *Ex parte Godeke*, 163 Tex. 387, 355 S.W.2d 701, 703 (1962). Likewise, for the purpose of applying the Texas statute of limitations to a foreign judgment sought to be enforced in Texas, the rendition date of the foreign judgment is a question of law for the Texas courts. *Collin County Nat. Bank v. Hughes*, 110 Tex. 362, 220 S.W. 767, 768 (1920).

There are several methods for rendering judgment. *See* 49 C.J.S. *Judgments* § 102 (1947). One of the general and accepted methods of rendition is "the return and recording of the general jury verdict" method.

*Id.* Under this method, the jury verdict is received under the direction of the court and recorded by the clerk. *Id.* In that regard, the clerk must record only the verdict returned and received by the court. Recording by the clerk is a ministerial duty. This was the method followed by Oklahoma in 1977 when the initial litigation was consummated. *See Lawrence Systems v. Superior Feeders*, 837 P.2d 488 (Okla.Ct.App.1992).

In *Lawrence Systems*, the court sets forth the following pertinent facts:

> On November 30, 1990, Appellant [Lawrence Systems] filed its "Motion for Entry of Judgment on the Verdict and for Award of Attorney's Fees" *seeking memorialization of a judgment* and an award of attorney's fees. The trial judge denied the requested relief.... It is from this denial that Appellant [Lawrence Systems] appeals. (Emphasis added).

*Lawrence Systems*, 837 P.2d at 488. The appellate court further stated:

> The question on appeal relates to whether 12 O.S.1981 § 735, as amended effective October 1, 1981, compels a finding that a *March 22, 1977, judgment* secured by Appellant against Appellees is *now dormant* and *no longer enforceable.*
>
> Appellant was *awarded a jury verdict in this case on March 22, 1977.* The jury's *verdict was accepted by the trial court.* However, the court did not memorialize its judgment nor did it rule on the application for attorney's fees. (Emphasis added).

*Id.* at 488–89.

As the Oklahoma appellate court stated, the jury verdict in the District Court of Cimarron County, Oklahoma was received by the court and recorded or filed by the clerk, on March 22, 1977, entitling Lawrence Systems to recover $99,592 from Superior Feeders. According to then-existing Oklahoma law, this verdict constituted a final enforceable judgment (the 1977 judgment), *see* Okla. Stat.Ann. tit. 12, § 696 (West 1988), *repealed by* Okla.Sess.Laws 1990, c. 251, § 20, and was entitled to full faith and credit under the United States Constitution.[5] Lawrence Sys-

---

5. The Full Faith and Credit Clause of the United States Constitution provides that "Full Faith and

tems then sought execution on the judgment in Oklahoma on four occasions between 1979 and 1991.

On November 30, 1990, Lawrence Systems filed a motion for entry of judgment in the Oklahoma trial court. By its motion, Lawrence Systems sought to memorialize the 1977 judgment. The trial court denied the motion on the ground that the Oklahoma judgment was dormant. Lawrence Systems appealed to the Oklahoma Court of Appeals, Fourth Division. The court of appeals reversed the trial court's decision and directed the judge to sign a written order memorializing the 1977 judgment. *Lawrence Systems,* 837 P.2d at 490. In compliance with the Oklahoma appellate court's decision, the trial judge signed an order, on September 23, 1992, memorializing the 1977 judgment (the 1992 order).

On October 29, 1992, Lawrence Systems filed the 1992 order with the District Clerk of Deaf Smith County, Texas, attempting to enforce the judgment under the Uniform Act. Upon receiving notice of the filing, Superior Feeders moved to have the judgment declared unenforceable in Texas by virtue of section 16.066(b). Superior Feeders contended that the 1992 order was nothing more than a memorialization of the 1977 judgment. We agree.

The memorialization statute was enacted in Oklahoma to require the court to reduce to writing, sign, and record its orders, judgments, and decrees "within a reasonable time after their rendition." Okla.Stat.Ann. tit. 12, § 32.2 (West 1988), *repealed by* Okla.Sess. Laws 1990, c. 251, § 20. Further, the written order, judgment, or decree signed by the court was a jurisdictional prerequisite for appellate review. *Id.* The memorialization statute served no other useful function and was repealed without being replaced by a similar statute.

We are persuaded that the 1992 order is no more than a memorialization of the 1977 judgment, as the Oklahoma appellate court indicated, and that September 23, 1992 is not the date the final judgment was rendered in the Oklahoma case. In that regard, we note that the 1992 order purported to award interest from March 22, 1977. Further, both the Oklahoma appellate court and the parties considered and treated the 1977 judgment as the final judgment in the cause. In its opinion, the Oklahoma appellate court noted that Lawrence Systems caused execution to issue on the judgment four times, over a fourteen-year period, after rendition of the judgment on March 22, 1977. In the absence of execution, the 1977 judgment would have been dormant and unenforceable in either Oklahoma or Texas.

■ For purposes of applying the Texas statute of limitations to the Oklahoma judgment sought to be enforced under the Texas Uniform Enforcement of Foreign Judgments Act, we must conclude the Oklahoma judgment was rendered on March 22, 1977. In that regard, we point out that Texas and Oklahoma each follow the general and accepted rule that only one final judgment may be rendered in any cause. *See Gainesville Oil & Gas v. Farm Credit Bank,* 795 S.W.2d 826, 827 (Tex.App.—Texarkana 1990, no writ); *J.A. Tobin Construction Co. v. Grandview Bank,* 424 P.2d 81, 84 (Okla.1966). The one final judgment rule provides that, if the trial court renders a second judgment in an action, the first judgment prevails and the second judgment is a nullity, unless it specifically vacates the first judgment. *Gainesville Oil & Gas v. Farm Credit Bank,* 795 S.W.2d at 827; *Mullins v. Thomas,* 136 Tex. 215, 150 S.W.2d 83, 84 (Tex.Comm'n App.1941, opinion adopted); *Aishman v. Taylor,* 516 P.2d 244, 245 (Okla.1973). As the Oklahoma Supreme Court stated in *Aishman:*

> Merely entering a second judgment cannot, per se, vacate a prior judgment in the same action.
>
> The *second judgment is a nullity* and the respondent is prohibited from conducting further proceedings or *taking further action to enforce the second judgment.* (Emphasis added).

*Aishman,* 516 P.2d at 245.

■ Here, the 1992 order does not vacate, acknowledge, or otherwise mention the

Credit shall be given in each State to the *public Acts, Records, and judicial Proceedings* of every other State." (Emphasis added). U.S. Const. art. IV, § 1.

1977 judgment rendered and entered in the Oklahoma action. Even assuming *arguendo* that the 1992 order is a rendered judgment, it would be a nullity as a second judgment. *See Aishman*, 516 P.2d at 245. In Texas, we would reach the same result. *See Mullins*, 150 S.W.2d at 84.

Consequently, for the purpose of applying the Texas statute of limitations to the Oklahoma judgment sought to be enforced under the Uniform Act, we conclude that the judgment sought to be enforced was rendered on March 22, 1977, and that section 16.066(b) bars enforcement of the judgment in Texas. Lawrence Systems' contention that the Oklahoma judgment was rendered on September 23, 1992 and is not barred by section 16.066(b) is overruled.

Next, we will consider Lawrence Systems' remaining contentions (*i.e.*, one, two, and five). By the first contention, Lawrence Systems asserts that the motion to vacate allegations constitute a collateral attack on the Oklahoma judgment. By the fifth contention, Lawrence Systems contends "that the judgment was res judicata to all matters asserted or that Superior Feeders had waived any objections to the form of the judgment."

■ These contentions are based on claims that the trial court erred in overruling Lawrence Systems' third and fourth special exceptions to Superior Feeders' pleadings. By these special exceptions, Lawrence Systems claims that, as a matter of law, Superior Feeders' allegations fail to state a cause for vacating the judgment rendered by Lawrence Systems' initiation of the enforcement proceedings under section 35.003 of the Uniform Act. However, these special exceptions are actually general demurrers. Consequently, they are insufficient to require the trial court to take remedial action. Tex. R.Civ.P. 90. Nor do they present cause for disturbing the trial court's judgment. *See International Security Life Insurance Co. v. Finck*, 475 S.W.2d 363 (Tex.Civ.App.—Amarillo 1971), *aff'd in part and rev'd in part on other grounds*, 496 S.W.2d 544 (Tex.1973).

Even though these contentions present nothing further for review, we acknowledge that Lawrence Systems claims in its brief that the 1992 order is the final and only judgment rendered in the Oklahoma action. However, we have responded to Lawrence Systems' assertion that the "Oklahoma judgment" was signed and rendered, on September 23, 1992, by setting out in this opinion that the assertion is unfounded, without legal or factual support, and contrary to the judicially established facts as determined by the Oklahoma court of appeals. *See Lawrence Systems*, 837 P.2d at 490. And furthermore, if need be, we now hold that the 1992 order is not the final judgment in the Oklahoma cause, nor is it even a judgment for the purpose of applying section 16.066(b) in this enforcement action. The 1992 order is merely "a written order memorializing the judgment granted on March 22, 1977," *id.*, and, as such, has no other legal significance in this proceeding.

■ We also note that Lawrence Systems voluntarily chose to file this enforcement proceeding under section 35.003 of the Uniform Act. Specifically, section 35.003(c) provides that filed foreign judgments are "subject to the same procedures, *defenses, and proceedings* for reopening, *vacating, staying, enforcing* or satisfying a judgment as a judgment of the court in which it is filed." (Emphasis added). In that connection, Superior Feeders' statute of limitations defense and motion to vacate are specifically authorized challenges to the enforcement of the Oklahoma judgment rather than unauthorized collateral attacks. Likewise, since these challenges could only be raised for the first time in this enforcement proceeding, they are not precluded by res judicata. *See McGuire v. Commercial Union Insurance Co. of N.Y.*, 431 S.W.2d 347, 352 (Tex.1968).

■ Moreover, assuming *arguendo* that the 1992 order is a judgment, as claimed by Lawrence Systems, the judgment would be null and unenforceable under Oklahoma law, *see Aishman v. Taylor*, 516 P.2d at 245, and Texas law. *See Mullins v. Thomas*, 150 S.W.2d at 84. In this vein, it is elementary that, when a judgment is a nullity, it is subject to either a direct or collateral attack in any proceeding where its validity is asserted. *Boyd v. Gillman Film Corporation*, 447

S.W.2d 759, 763 (Tex.Civ.App.—Dallas 1969, writ ref'd n.r.e.). Likewise, a null judgment has no legal effect and will not support a res judicata plea. *City of Lufkin v. McVicker,* 510 S.W.2d 141, 144 (Tex.Civ.App.—Beaumont 1973, writ ref'd n.r.e.).

■■■■ Under the fifth contention, Lawrence Systems also asserts waiver. However, because waiver was not plead or presented in the trial court, no waiver complaint is preserved for appellate review. Tex. R.App.P. 52(a). Consequently, we overrule Lawrence Systems' first and fifth contentions.

Lastly, we address Lawrence Systems' second contention by which it claims the trial court erred in receiving "evidence aliunde the judgment" (*i.e.,* evidence outside the judgment). The judgment referred to is the 1992 order. For reasons already stated in the disposition of Lawrence Systems' other contentions, this contention does not present error. Contention two is overruled.

In summary, we have considered all of Lawrence Systems' points of error and contentions and conclude that they do not present reversible error. Accordingly, we overrule all of Lawrence Systems' points of error and contentions and affirm the judgment of the trial court.

REYNOLDS, C.J., files dissenting opinion.

REYNOLDS, Chief Justice, dissenting.

Differing from my brethren's view of the nature, and their disposition, of this cause, I respectfully dissent. Unlike them, I do not view the cause as an attempt by Lawrence Systems, Inc., by and through its successor-in-interest, Douglas–Guardian Warehouse Corp., to "enforce" against Superior Feeders, Inc., O.C. Elliott, and Herbert Vogel an Oklahoma judgment, the filing and enforcement of which are barred by the limitation provisions of Texas Civil Practice and Remedies Code Annotated § 16.066 (Vernon 1986).[1] Rather, in my view, the cause presents the narrower question whether section 16.066 bars the filing of the 1992 Oklahoma judgment under the Uniform Enforcement of Foreign Judgments Act, Texas Civil Practice & Remedies Code Annotated §§ 35.001–35.008 (Vernon 1986) (the Act).[2] I conclude that it does not; thus, I would reverse and render.

The events leading to the signing of the Oklahoma judgment on 23 September 1992 are adequately recorded in the majority opinion. It suffices to state that before the judgment was signed, there was only the Oklahoma jury verdict filed with the court clerk on 22 March 1977. Although the verdict was treated as, and given the authority of, a final, enforceable judgment in Oklahoma, *see Lawrence Systems v. Superior Feeders,* 837 P.2d 488 (Okl.App.1992), neither section 16.066 nor any other statute authorized the filing of the verdict in Texas as a foreign judgment. Then, not until the Oklahoma judgment was signed on 23 September 1992 was there a foreign judgment which could be filed pursuant to section 16.066.

Thereafter, on 29 October 1992, Lawrence Systems,[3] following the procedure specified by the Act, filed its notice of filing of the September 23 foreign judgment with the 222nd Judicial District Court of Deaf Smith County, Texas. The filing activated these pertinent provisions of the Act:

> (b) The clerk shall treat the foreign judgment in the same manner as a judgment of the court in which the foreign judgment is filed.
>
> (c) A filed foreign judgment has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying a judgment as a judgment of the court in which it is filed.

Tex.Civ.Prac. & Rem.Code Ann. § 35.003(b)–(c) (Vernon 1986).

---

**1.** Subsequent references to section 16.066 are to that section of Texas Civil Practice and Remedies Code Annotated (Vernon 1986).

**2.** Subsequent references to the Act are to the Texas Civil Practices and Remedies Code Annotated §§ 35.001–35.008 (Vernon 1986).

**3.** Although Lawrence Systems, Inc. is acting through its successor-in-interest, Douglas–Guardian Warehouse Corp., the name Lawrence Systems is used for simplicity.

Subsequently, Superior Feeders, Vogel and Elliott, collectively referred to as Superior Feeders, moved the trial court to vacate the judgment and have it declared null, void and unenforceable. As the basis for the motion, Superior Feeders alleged that the 23 September 1992 judgment was nothing more than a memorialization of the 22 March 1977 judgment and not entitled to full faith and credit in Texas, because its 29 October 1992 filing, and an action to seek its enforcement, are barred by the 10 year limitations period of section 16.066 which, in its entirety, reads:

(a) An action on a foreign judgment is barred in this state if the action is barred under the laws of the jurisdiction where rendered.

(b) An action against a person who has resided in this state for 10 years prior to the action may not be brought on a foreign judgment rendered more than 10 years before the commencement of the action in this state.

(c) In this section "foreign judgment" means a judgment or decree rendered in another state or a foreign country.

Supporting the motion, Elliott and Vogel filed affidavits stating that they had lived in Texas for at least the last 10 years.

Inescapable is the threshold observation that the motion filed by Superior Feeders is an independent proceeding to have the Oklahoma judgment declared null, void and unenforceable pursuant to section 16.066, which also is alleged to prevent its filing. Whether the 1992 judgment is subject to the limitation period of section 16.066 as a 1977 judgment should be determined when an "action" is brought on the foreign judgment, not as an independent proceeding which attacks the filing of the judgment.

Lawrence Systems failed to persuade the trial court that section 16.066 was inapplicable, and cannot act as a bar, to proceedings under the Act. Finding that the 22 March 1977 judgment memorialized by the 23 September 1992 judgment, the foreign judgment, was not entitled to enforcement or recognition under the Act, the trial court ordered that the judgment was null and unenforceable, that it was vacated, and that all liens

based upon, and all abstracts of, the judgment shall be released.

The seven-points-of-error challenges to the court's judgment are not enumerated as such in the majority opinion. Although all points will be later identified, only those necessary to a proper disposition of the appeal are addressed. Tex.R.App.P. 90(a).

Lawrence Systems' first- and third-point contentions that the trial court erred in granting the motion to vacate and in vacating the foreign judgment are correct. A Texas court cannot vacate the judgment of a court of another state. *Moncrief v. Harvey*, 805 S.W.2d 20, 22 n. 2 (Tex.App.—Dallas 1991, writ denied); *and see Roland v. Roland*, 244 S.W.2d 318, 320 (Tex.Civ.App.—Texarkana 1951, writ ref'd n.r.e.).

Moreover, in the trial court, Superior Feeders candidly conceded it was not, and is not, "attacking [the Oklahoma judgment] directly or collaterally," and, on appeal, admits that it "is not seeking to invalidate the Oklahoma judgment." It follows that the foreign judgment, fully litigated in Oklahoma and properly filed in this state, is entitled to full faith and credit, *Roark v. Sweigart*, 848 S.W.2d 387, 389 (Tex.App.—Amarillo 1993, no writ), and should not have been vacated by the trial court. Lawrence Systems' first and third points of error should be sustained, not overruled under the guise that the trial court did not vacate the judgment.

Although the Oklahoma judgment is valid, the trial court, by its findings, conclusions, and order that the judgment is null and unenforceable, implicitly determined that the proceedings under the Act were barred by section 16.066 as alleged by Superior Feeders. With its second and fifth points of error, Lawrence Systems contends that such a determination was erroneous because the plain language of the statutes makes a stated distinction between actions on foreign judgments and proceedings under the Act. Pointing out that its proceeding under the Act was basically a filing procedure, not an action, Lawrence Systems represents that a distinction between an action under section 16.066 and a proceeding under the Act is recognized by section 35.008 of the Act, which provides that "[a] judgment creditor

retains the right to bring an action to enforce a judgment instead of proceeding under this chapter."

Without question, Texas has the power to prescribe the period of limitation for actions in its own forum upon judgments rendered in other jurisdictions, *Collin County Nat. Bank v. Hughes,* 110 Tex. 362, 220 S.W. 767, 768 (1920), such a limitation being procedural rather than substantive in nature. *Newhouse v. Newhouse,* 271 Or. 109, 530 P.2d 848, 849 (1975). Thus, the question becomes whether the statute of limitations provided by section 16.066 was properly applied to bar proceedings under the Act on the Oklahoma judgment, thereby rendering the judgment unenforceable, albeit not null as found by the trial court.

In enacting the previously quoted section 16.066, the Legislature provided that an *action* on a foreign judgment is barred in this state if the *action* is barred under the laws of the jurisdiction where the judgment was rendered, and that an *action* against a person who has resided in this state for 10 years prior to the *action* may not be brought on a foreign judgment rendered more than 10 years before the commencement of the *action* in this state. The term "action" is not defined in the statute; therefore, it is to be given the particular meaning it has acquired by common usage. Tex.Gov't Code Ann. § 311.011 (Vernon 1988).

Historically, limitation statutes employ the term "action," which is synonymous with the term "suit," *Whitfield v. Burrell,* 54 Tex.Civ. App. 567, 118 S.W. 153, 156 (1909, writ ref'd), to denote a judicial proceeding which, if prosecuted effectively, results in a judgment. *Garcia v. Jones,* 147 S.W.2d 925, 926 (Tex. Civ.App.—El Paso 1940, writ dism'd judgm't cor.). In this sense, Lawrence Systems, by filing its Oklahoma judgment, which Superior Feeders moved the trial court to vacate and hold null, void, and unenforceable, has not brought an action to secure a judgment, or to enforce the judgment within the meaning of § 35.008 of the Act; instead, Lawrence Systems merely followed the procedure provided by the Act for the registration of its foreign judgment.

It is to be noticed that the procedure for filing a foreign judgment authorized by the Act neither involves the adjudication of any rights of the parties nor introduces an issue between them, except in respect to compliance with the filing requirements. The status of the parties and their relative rights, as fixed in the foreign judgment, remains unaltered by the filing as authorized by the Act. Therefore, the procedure cannot be regarded as an "action" within the meaning of section 16.066, or be subject to the limitation therein provided so as to render the foreign judgment unenforceable.

This determination remains unchanged after examining the cited holdings of courts in other states which have adopted the Uniform Enforcement of Foreign Judgments Act, offered by the parties for their respective positions since this is a case of first impression in Texas courts. Of the citations, the circumstances in *Producers Grain Corporation v. Carroll,* 546 P.2d 285 (Okl.App.1976), most closely parallel the situation presented to us, because the language of the Oklahoma statute of limitations tracks more closely the language of section 16.066.

In *Carroll,* the Oklahoma Court of Appeals was called upon to decide whether the Oklahoma statute of limitations, providing that "civil actions ... can only be brought within the following periods ...," governed proceedings under the Act. The key factor in the court's determination that the proceedings were not barred was that the Act does not involve the institution of an action to enforce the judgment; it requires only that it be filed in accordance with the provisions of the Act to be enforceable, and the statute of limitations barred only "civil actions" not brought within the specified period. *Id.* at 287–88.

Thus, the *Carroll* court and I arrived at like decisions by much the same reasoning based upon the particular, but similar, language of the applicable statutes of limitations. By contrast, those cases, cited by Superior Feeders, one of which distinguished and did not follow *Carroll,* applied their limitations statutes to foreign judgments on the basis of the precise wording of their respective state statutes.

The case in which *Carroll* was distinguished and not followed, *Eschenhagen v. Zika*, 144 Ariz. 213, 696 P.2d 1362 (App. 1985), nevertheless recognized a distinction between an action brought on a foreign judgment and a proceeding under the Act. Presented with the question whether the filing of a foreign judgment nine and one-half years after it had been entered should be quashed, the court noted that if Eschenhagen had brought an action to enforce the foreign judgment, the action would have been barred by Arizona's four-year statute of limitation, but she proceeded under Arizona's version of the Act and an Arizona statute providing that "no execution or other process shall issue upon a judgment after expiration of five years from the date of its entry" unless properly renewed. *Id.*, 696 P.2d at 1364. The court distinguished the *Carroll* holding primarily on the basis that the Arizona statute placing limitations on "execution or other process" on judgments did not contain the Oklahoma statute's language limiting it to "civil actions" on a foreign judgment. *Id.* at 1367. Then, the court held that enforcement of the foreign judgment was precluded under either of its limitations statutes and, without determining which one applied, ordered the quashal of the filing.

Neither of the other two decisions cited by Superior Feeders addresses a situation comparable to the one in this appeal. In *Newhouse v. Newhouse*, 271 Or. 109, 530 P.2d 848 (1975), the registration of, coupled with the commencement of an action to enforce, a foreign judgment obtained more than twenty-two years earlier was set aside because the Oregon statute of limitations provided that an action on such judgment shall be commenced within ten years. But, in our appeal, an action to enforce the foreign judgment is not involved.

In *Alexander Construction Co. v. Weaver*, 3 Kan.App.2d 298, 594 P.2d 248 (1979), the entry of a foreign judgment was stricken because it was filed some four years after the time allowed by the applicable statute of limitation for "execution, including any garnishment proceeding and any proceeding in aid of execution." *Id.* 594 P.2d at 250–51. Unlike the Kansas statute, section 16.066 applies only to an action on a foreign judgment.

The determination that proceedings under the Act are not affected by the limitations provided by section 16.066 does not, as Superior Feeders suggests, render section 16.066 meaningless. The limitations on actions brought on foreign judgments is not within the scope of the issue presented, which is only the narrow question whether the limitations provided by section 16.066 bar proceedings under the Act. Our holding should be that the procedure provided by the Act is not an "action" to which the plain language of section 16.066 applies. Lawrence Systems' second and fifth points of error should be sustained.

The sustainment of Lawrence Systems' first, second, third, and fifth points of error would dictate the sustaining of its fourth point, by which it challenges the trial court's order that all liens or abstract of judgment liens be released. By these sustainments, a resolution of Lawrence Systems' last two points—its complaint of the admission of evidence aliunde and its claim of res judicata—would be pretermitted. Tex.R.App.P. 90(a).

Accordingly, the judgment of the trial court should be reversed, and judgment should be here rendered that Superior Feeders take nothing by its motion to vacate the foreign judgment and have it declared null, void and unenforceable. Because the majority has not done so, I respectfully dissent.